Good morning, Your Honors. Thank you. May it please the Court. My name is Matthew Kita. I represent Plaintiff Appellant Nathaniel King. Your Honors, as the first paragraph of the District Court's opinion reflects, this is an employment dispute and it involves two competing motions for summary judgment. The defense filed one alleging that none of the plaintiff's claims for wrongful termination based on disability or retaliation have merit, and the plaintiff filed a motion, a partial motion for summary judgment, saying that all of the defendant's defenses were unmeritorious. The District Court granted the defendant's motion for summary judgment and did not consider the plaintiff's motion as moot, and we respectfully submit that that was error because the principal issue that plaintiff uses to defend defendant's motion for summary judgment was raised in his motion and creates the very fact issues that defendants actually acknowledge. Now, I know when we begin these oral arguments, we're usually told that you and your clerks are very familiar with the record and it's not necessary to do a lengthy recitation, and if the Court would just indulge me, there are a few facts that are just procedural in nature that I'd really like to go over because they form the heart of the argument that I'm about to present. I think it's undisputed and the Court is aware DFW Airport hired Mr. King. There is no dispute that they were aware that he had lower back and hip injuries. There's no dispute that he took a bunch or several periods of FMLA leave and short-term disability leave in 2019 and into 2020. When he returned in January of 2020, he was placed on modified duty. In April, when that time ran out, DFW Airport told him, there will be no more modifications. You need to apply for short-term disability leave or find a new job. So Mr. King tried to do sort of all three. He tried to apply for short-term disability leave through the third-party administrator. He tried to get a modification to his current job, essentially allow the modified duty to continue or get reassigned to another job. The third-party administrator denied his request for short-term disability in June. Shortly afterwards, I believe it was July 31st, he asked for the modified duty to continue. In other words, make reasonable accommodations for the job that I've held for the last six years. And there was a meeting on August 25th in which they said, no, we're not going to do that, but you can apply for other jobs. And then between August and October of 2020, there's a dispute as to whether Mr. King actually applied for the jobs because he emailed DFW higher-ups or whether he should have used a port. But the important part is that in the meantime, the third-party administrator granted his appeal of the denial of short-term disability, but made it retroactive such that he ran out of short-term disability before this meeting even occurred. So DFW then justified firing him by saying, you haven't been at work since April and you're well past your short-term disability. So respectfully, Mr. King was in a fair bit of a catch-22 because he couldn't deny that he had not been at work since April, but he was trying to do all of what he was told to do. Had they said anything to him in the interim that you needed to get back up to work so you're not terminated? There are email communications between Mr. Young and, there's two Mr. Youngs, but one of the Mr. Youngs worked for DFW, and a plaintiff with respect to, you need to be applying, these jobs aren't available. Not applying, but you need to be getting back up to work. I don't see anything in the record, Your Honor, that says when your short-term disability runs out, you are fired until the termination letter. Well, they didn't do it immediately, though, right? I mean, they gave him, what, a couple months even after that termination. Yes, Your Honor, and at that time the appeal was pending, so everything was sort of in limbo at the time. But I think the important thing that I want to focus on here is at that meeting two things were discussed. One was, will you please make modifications to my current job, and they said no. And the heart of our case here is that that is an adverse employment action because it's somebody that they knew was disabled, he came forward with a request for a reasonable alternative, and for what I'm going through next, we don't believe that DFW satisfied its burden to come forth to say that there's an undue burden that would prevent us from satisfying that alternative. But is he making a failure to accommodate claim? Yes, Your Honor. Isn't that waived? Your Honor, that's exactly where I was going with this. Okay, good. Okay. So he files an EEOC complaint in which he says, the plain text of what he writes, and I think this is page 822 of the record, says, DFW failed to help me find a reassignment as promised. And in this lawsuit that he filed, he alleged that DFW refused to consider reassignment requests, refused to provide reasonable accommodations, and then retaliated against him for requesting those reasonable accommodations. DFW answers the suit saying you didn't exhaust your administrative remedies, your suit exceeds the scope of your charge, and accommodating would impose an undue hardship. So plaintiff files a motion for summary judgment in which it cites the cases based on waiver, saying there was no waiver here. It cites cases for the undue hardship, saying you have no evidence of that. Grant me summary judgment because you can't prove it. So we have to decide if there was waiver? Yes. Or reasonable accommodation. Yes, Your Honor. And that's The district court didn't address that, really. Correct. The district court said that because there is a neutral reason for terminating him, essentially, that he used 180 degrees, 180 days of short-term disability leave and well exceeded that, that that's a neutral grounds for terminating him. But the fact is, is that in an adverse, excuse me, in a reasonable accommodation claim, you don't have to show the pretext argument. The absence of the saying no to the request for the reasonable accommodation claim is enough. It's not a McDonnell-Douglas. It's modified McDonnell-Douglas. It's not the same. It's not the textbook Title VII kind of McDonnell-Douglas, where they can say we had a good reason and it was this. Correct. So, you still have to address the merits of why you didn't accommodate. Yes, Your Honor. And that's EEOC versus OHC. In every case. Yes. You asked for an accommodation. If you timely ask for an accommodation and provide reasons that you need to be accommodated, you have to say, no, we can't accommodate you because the job doesn't allow it or your accommodation is widely too much and we have a different accommodation or something like that. Yes. Okay. So, that's your point. That's your best argument. My best argument in this case is that that's the part that's wrong. Yes, Your Honor. And with respect to the waiver issue, that was addressed directly in the Plaintiff's Motion for Summary Judgment, in which he said, you know, under this Court's precedent, we interpret EEOC complaints with the charge document, the one-page, we construe those liberally. Obviously, if I'm complaining about you not reassigning me to a different job, I'm also complaining that you won't let me keep my current one. And that that is not the same type of waiver. Is reassignment the same as a failure to accommodate? Your Honor. I don't know that that follows, does it? I'm not going to say that they're the same because they're clearly slightly different. But where this Court has held that you waived a claim weren't in things that were really closely related. It would be like if someone said, I have a disparate impact claim and I have an unequal application claim. And this Court has said, no, those two aren't the same because for one of them, you have to specifically identify a neutral policy that was violated. Was the failure to accommodate claim articulated in the complaint? Yes, Your Honor. The complaint filed in this action? Complaint filed in this action? Was it argued in the Summary Judgment motion, a failure to accommodate claim? Yes, Your Honor. It was argued both in the Plaintiff's Motion for Summary Judgment, in other words, that they can't come forward with any undue burden showing that they can't accommodate me, and it was argued in the Plaintiff's response to the Defendant's Motion for Summary Judgment in which they said, I have at least a fact issue. And this is the important point, is that the District Court agreed with us on that point. So even though they never addressed Plaintiff's Motion for Summary Judgment, the District Court said, we find that there's a genuine issue of material fact in dispute as to whether Mr. King can perform the essential responsibilities of his job. That's the end of the inquiry of his current job, of the job he currently had. So before we even get to whether DFW didn't properly reassign him, if there's a genuine issue of fact as to whether Mr. Smith, Mr. King could perform his current job, the next step is, did, with accommodations. And the next step is, did DFW show an undue burden? And the Court never addressed that. And they never addressed the waiver issue. So when we came to this Court and said, just as you said, Judge Elrod, that this accommodation with the waiver was never addressed, and there was no evidence of undue burden, DFW has said, we've waived that argument. So our main argument in our reply brief was that, no, we haven't. The only argument, the only case that you cited in support of the waiver argument was one, like I just mentioned before, involving the difference between disparate impact and unequal treatment, where there's essentially, this Court's position was, if the charge doesn't specify exactly what the allegedly discriminating employer did wrong, and an investigation by the EEOC might have turned up an entirely different result or might have gone an entirely different direction, that's waiver. And we're not going to have the district courts second-guessing administrative decisions when you didn't tip the administrative agency off as to what it should be looking for in the first place. But we respectfully submit, and I think this is the major issue for this Court to address, is was there waiver here? Is complaining you didn't reassign me essentially also complaining you didn't conclude that I needed to be, sorry, you didn't conclude that reassignment was not necessary because I could do my current job? Should we send that to the district court to say if there was waiver here? I have two answers, of course, which are yes and no. This case arose in 2020. It's been more than four years. We're now here. If this Court can look at the record that is there and acknowledge that in DFW's response to our motion for summary judgment, they acknowledged there are genuine issues of material fact and dispute with respect to undue burden, this Court can say remand for trial. The issues are satisfied. Even though the district court didn't specifically address waiver or undue burden, the record is there, and this Court — Should it be remand for trial or should it be remand for them to also be able to say that it's too difficult to accommodate or something like that? Well, right now, the law of the case is that there's no dispute. In their appellee's brief, they did not suggest that the district court erred when concluding the genuine issues of material fact exist. And I'm not foreshadowing that we're doing any of that. Of course not. If we did that, would we do that? Okay, so I thought what you were going to argue was that he had applied for jobs and that they didn't say you shouldn't apply by telling the manager who had been so friendly, and the manager wasn't saying, no, you really need to forward this to the portal, and you must do that, and here's how you can access the portal. I thought that was your claim. And that we briefed the issue extensively because, obviously, we didn't want to waive it. We think that there's a fact issue about what he was told and whether he complied with what he was told. But the easier route for this Court, as opposed to determining — as opposed to addressing that issue, is simply to say that the court — the district court below didn't even consider the arguments or the responses to plaintiff's motion for summary judgment in which the defense admits that undue burden is a fact issue, and yet in their own motion, they make no evidence and point to nothing in the record that shows that it was an undue burden. They're not entitled to summary judgment on the very grounds that they moved on it, and if we look further, the grounds that they moved on it, they admitted away in their response to the other motion that the district court didn't address. JUSTICE KENNEDY Let me ask you this. Does the fact that King applied for both jobs — for the job on the portal before he was hired, and after he was terminated, negate his argument that he wasn't able to do so at home? MR. GOLDSTEIN Respectfully, Your Honor, no. I just do not believe that as a matter of law, that that suggests that somehow Mr. King was not telling the truth, which is, I think, what the district court said in its opinion. Maybe summarizing here, but I believe it says, we find it hard to believe, or I find it hard to believe that he was able to access the portal before and after he was terminated, but not during that time. And I don't think that's the dispositive issue here. If the court is going to look at whether he made efforts to apply, whether there's a genuine factual dispute as to whether he made efforts to apply for the job, I don't think the fact that he had used the portal at some time in the past should be dispositive. Instead — JUSTICE SCALIA But is the fact that he made efforts to apply, even if it was per this conversation that they had, just by sending it to the manager, is that enough? I mean, is there evidence in the record that he applied for a position for which he was qualified, that was also available, that then they didn't give him? MR. GOLDSTEIN Yes, Your Honor. Now — JUSTICE SCALIA Other than — where's that in the record? MR. GOLDSTEIN That is in his affidavit. And the district court — JUSTICE SCALIA His affidavit. But, I mean, is there — is there any documentation? Is there any other evidence, email traffic, anything like that? MR. GOLDSTEIN No. DFW Airport did not produce any evidence that helps us with our claim. He has said, I applied for these jobs, and here's the reasons I was qualified. There's nothing in the record that explains why he wasn't qualified. Now — JUSTICE SCALIA So it's his view of — I could have done this position, et cetera, and so forth, but there's nothing on the other side that says, you know, we're declining this or what have you. I mean — MR. GOLDSTEIN Can I briefly answer? I see I'm out of time. Yes, Your Honor, it is his view. I don't want that to be confused with me stating that he is somehow qualified to offer an expert opinion here. I think this Court has said that in the context — JUSTICE SCALIA I'm not asking for that. I'm just asking for the evidence of any pretextual reason for terminating him, which — I mean, they say you ran out of leave. Therefore, we're terminating you. MR. GOLDSTEIN And his — his argument is, I applied and you never got back to me, or you always said that I wasn't qualified for these jobs without explaining it. And I want to concede that that comes from his own affidavit, but the district court's analysis didn't suggest that he lost on the merits. The district court's analysis says, well, that was a self-serving affidavit. JUSTICE SCALIA Well, the district court said there was no evidence of pretext that he wasn't fired for the reason they stated, and that means he  MR. GOLDSTEIN Correct. And I think what we've argued here, Your Honor, is that if you look behind — that there is, under this Court's test of what is pretext and what is essentially a false reason or one that's unbelievable, the fact that he was very conveniently fired for being out of leave when they retroactively granted his appeal, but then did so such that he was out of leave before they even had the meeting where they were going to consider whether he could reapply. MR. WALENSKY They didn't fire him right there. They waited for some months. They actually encouraged him to apply and those kinds of things or whatever. I mean, as I — as I apprehend the theory, and I don't want to take up more of the Court's time, but it's that, well, you were deliberately waiting until I ran out of leave. You were just running the clock down, and then you had your reason, and you fired me. But in reality, you could have, you know, accommodated or reassigned or whatever. I'm just asking for what is the evidence to support that theory. MR. GOLDSTEIN I think the evidence, Your Honor, would be Mr. King's affidavit in which he details his efforts to find a job during the time when he believed DFW was considering it on the merits. MS. GOTTLIEB Thank you. We have your argument, and you have your argument.  MS. HARRISON Good morning. May it please the Court? Caroline Harrison on behalf of DFW International Airport Board. As an initial matter, I want to address a comment that my friend, Mr. Akita, just made with regard to whether the issues before the Court about the mootness of plaintiff's own MSJ, that was not, I didn't see it in my reading of any of the briefing on the issues on appeal brought forward, and so I want to make that point as an initial point. MR. GOLDSTEIN Well, the question would be, I guess, whether regardless of the plaintiff's motion for summary judgment, was there material in the motion in the record otherwise that would have defeated your motion for summary judgment, right? I'm hoping you'll sort out this failure to accommodate claim, whether that's waived, not waived, whether it was raised in the district court, because if the district court, if it was raised and the district court just glossed over it and didn't address it, that's problematic, right? But if it wasn't raised and wasn't put before the Court, that's a different scenario, so help clear that up. MS. HARRISON Absolutely, Your Honor. So I think what's happening here is there's sort of a conflation of a failure to accommodate in the sort of the traditional sense of a standalone failure to accommodate claim versus what I think Mr. King is trying to say in the underlying case was that they didn't accommodate me, and that is evidence of the discrimination in this case. I don't, I don't MR. GOLDSTEIN He says they asserted a failure to accommodate claim. MS. HARRISON I understand that, and I respectfully disagree with him. I don't read the EEOC charge to have a traditional failure to accommodate claim. I don't read the original complaint in this case to have a failure to accommodate claim in the traditional sense of it, Your Honor. Every, every time that, yes, Your Honor. MR. GOLDSTEIN If the, your client has accommodated King's disability, would he have used up his allotted 180 days of leave? MS. HARRISON It depends on, I have a two-part answer to that. The first part is if you're, if we're assuming that the failure to accommodate is in the traditional sense, he still would have, as a very technical matter, used up his leave because that meeting on August 25th happened after he had used all of his 180 days, but nobody knew that at the time. We didn't know that until November. So in a very technical sense, yes. However, as the facts played out, it was clear that DFW was allowing him on the reassignment part of his accommodation request to continue to apply for several months after that meeting. So in the technical sense, yes, but I don't think that's how it actually played out. MR. GOLDSTEIN What kind of failure to accommodate establish a primary case, a prima facie case of discrimination? MS. HARRISON I don't think it can. I think it can be some evidence perhaps of the causal nexus. So in that way, it could, Your Honor. MS. COOPER What's puzzling is the District Court's opinion because the District Court does start to analyze would he be able to perform the essential functions of the job in spite of his disability, which is what you would do on a freestanding accommodations claim. And then the District Court says, well, even if he could, he says there's a fact issue on it, and then he says if he could pursue it, he said he would still need to show he was subject to an adverse employment decision on account of his disability. Well, that's not correct as a matter of employment law unless you're looking at the failure to get the new job. You wouldn't need to show subject to adverse employment action at that point on a straight-up accommodations claim. That is not an element of accommodations claim. You agree with me. You're a serious employment lawyer, right? Isn't that right? That prong that the District Court jumps to is only relevant on the discrimination based upon the failure to promote or give another job. Not promote, but give another job. MS. COOPER Yes. I would agree with that, Your Honor. MS. COOPER Okay. So it doesn't seem like he finishes the analysis on that point. You believe he doesn't because it's not an actual point in his complaint? MS. COOPER Yes, Your Honor. I think that's what I think. MS. COOPER Okay. So we have to go look at the complaint and the charge. Okay. MS. COOPER Okay. Did you have something further? MS. COOPER Yes, Your Honor. I wanted to address generally the disability discrimination claim. I think that the District Court properly granted summary judgment as to appellant's disability discrimination claim. And while I'm not conceding any facts necessarily, clearly before the court is not whether he's disabled or whether there was an adverse employment action. So I'm just going to talk about whether there's a causal connection between the adverse employment action and whether it was caused by his disability. The District Court found that appellant couldn't make his prima facie case because he couldn't show the causal nexus and that DFW had a legitimate non-discriminatory reason for the termination that was not his disability. And that was the 180-day policy with regard to how long an employee can be on short-term disability. DFW... MS. COOPER Did Mr. Mark Young ever tell him that he or Mr. Carl Young that you got a problem here because you've got this gap and you're just applying for positions and you're missing time and we're crediting that against you? Did he ever have any kind of notice? Because it looked to me that they were making promises to him, allegedly, if this was true. King was told he could look at the careers page, simply send the jobs he was interested in to Mark Young, send the jobs he's interested in to Mark Young, not go through some portal, who would circle back with Carl Young. Mark was going to just take care of this for him and would get it in front of the hiring authority. Like he's going to lobby on his behalf to try to get him based on an ADA accommodation. So Mark knows he needs a kind of... And I'm sorry I'm calling him by his first name, but there's two Youngs.  Mark knows he needs this accommodation. He's going to be the point person to help Mr. King according to the testimony in the record, the affidavit or declaration, whatever it is. And that seems to be some fact issue on assurance that he doesn't need to do the portal, that Mark's keenly aware that he needs an accommodation and he's going to be trying to help him get the right jobs, get a right job that would have an accommodation. And it doesn't seem to be letting him know that, by golly, you've got a big problem with not coming to work during this time because we're going to retroactively say that you haven't been at work. So I don't believe there's any evidence in the record that either Mark Young or anyone else called or sent a letter to Mr. King and said, hey, did you know we have this policy and the clock is running? I don't think anybody did that, Your Honor. Don't you normally tell an employee that they need to be coming to work when they're not showing up for work? And that would be the first thing you would do. You say you missed three days. If you missed another day, you're over the unexcused absence and you're fired. I think if it was something like that, Your Honor, I think if it was a three-day absence, yes, you probably would. But the reality here was Mr. King had been on short-term disability since April, the end of April. And his short-term disability was denied by Matrix. He then appealed it. And so really, DFW lets Matrix handle that short-term disability process. And so they didn't know what point it was at other than that it was on appeal. And so it's not in the record. But I think we can assume that they didn't want to reach out to him and say, hey, you need to come back to work or you're going to be terminated if he's in the middle of this appeal of whether he's entitled to short-term disability leave. But there's no evidence in the record of that specific point. What there is evidence of, though, is the interactive meeting that took place on August 25th. We have the transcript of that, and it's in the record. It is at Record on Appeal starting at 715 through 722. And in that meeting, there's a representative of Matrix who's the third-party administrator for DFW Airport Board. And then there are representatives of DFW Airport Board. Mr. Tim Richardson is a representative of Matrix, and he tells Mr. King that he can just reach out to Mark and inform him of any jobs that he's interested in. And then there is discussion, though, on the record about how Mr. King can look at the job postings on the portal and that he can reach out to Tim, I'm sorry, to Mark, and that they can get the process rolling. And then what happens after that? He does reach out to Mark. He does. He does reach out to him. And we have some, we have email communications, and those are between the two Mr. Youngs and Mr. King. And those email communications are at 531 to 532 in the record and 601. And those email communications starting in September, so just 10 to 15 days after that meeting, is the first time that we have documented evidence that Mark told him, hey, you need to apply through the normal process. Before that, it seemed Mark was assuring him that he could just tell Mark, and he's telling Mark. Yes, Your Honor. So he's not doing anything wrong. But really secretly, he's already terminated, basically, even while this is kind of a sham thing going on, because he's already terminated, because he's already had too many days, even before August 25th. Well, I don't think that's right, Your Honor, because he wasn't... If he'd have gotten in one of these jobs, then he wouldn't have been terminated at that point? We don't know, because he was already terminatable before the August 25th meeting ever happened. He was terminatable, yes, but he wasn't terminated until December, so... Or the reason that he was, yeah, but they used the reason from, that already existed. It wasn't a new reason. It wasn't a new reason, and I don't believe there's any evidence that, had he been reassigned, had he applied for a job that he was qualified for and gotten that job, I don't believe there's any evidence that he would have then been terminated, because they figured out the 180 days. We'll have a question about that. The summary judgment brief before the district court, your client asserted that King was not even considered for any of the positions, because he did not apply formally through DFW's online portal. Yes, Your Honor. Okay, but didn't Carl Young tell King that the jobs for which Young forwarded King's resume, which is it? Was King considered, but there were stronger people, or was he not considered? So that's, Carl is the person who gets to decide, right? Well, Carl is the HR person. He's not the recruiter, and so Carl was supposed to pass those resumes to the recruiter. Okay, but Carl says there's stronger candidates, but the previously representation was he wasn't even considered. So he's considered, if you say, we looked at you, but you're not as strong. I agree that that's what Carl's email sounds like, and there is other testimony in the record, though, from the VP of HR, who was deposed as a corporate rep, who said that Mr. Carl Young does not get to make that decision, and that he was supposed to pass it on to the recruiter. We don't have the evidence in the record, Your Honor, about whether he passed that on, but I agree his email says that. Is there evidence in the record as to what these candidates' superior qualifications were? There is not, Your Honor. There is a spreadsheet that says who was hired and that Mr. King wasn't selected because he wasn't the best qualified, but there is no evidence of that, and I don't believe that we got to the point where DFW had to show that, because Mr. King, it would have been Mr. King's initial burden to show that he was qualified for those positions. Right, but if we thought his emails to Carl Young and Mark Young count as applications, his original ones, until he's told that he can't send them that way, and we know that he was considered, and we know that he does have a disability and it's well known, why hasn't he met his initial burden under McDonnell Douglas at that point? I don't believe that he showed that he was qualified for those two positions. That's why I think that he didn't meet his initial burden, Your Honor, on that point. Or would that go to pretext? Would that go to undermining the business reason that DFW gave for terminating him, because there's no evidence in the record that he was passed over for positions he was otherwise qualified for, et cetera? I mean, I guess we're grappling with who has the burden here, and at summary judgment, how much does this conversation between the Youngs and him, just send them to me, yeah, that'll be fine, and he's trying to do that. I mean, how far does that get him, I guess? Does it get him past prima facie case, maybe fail at pretext, or does it get him all the way past summary judgment? I think that it could arguably get him past his prima facie case. I think, though, that when the burden does shift back in the summary judgment phase to DFW to show the legitimate nondiscriminatory reason, I think that that would go to his pretext argument. I don't think it's enough to get him to pretext, because he doesn't. What evidence is missing, then, undisputedly missing? I think that evidence that DFW deviated from its normal hiring practices is missing. There's no evidence that people were normally allowed to apply by just sending in e-mails to . . . Yeah, but he was told he could do it. We've got to give every inference to him, and reading this transcript, what they said, if I was sitting there receiving what Mark Young said, it would mean send the ones you're interested in to me, and he did, and then they memory hold it. Doesn't that create an issue of fact as far as even pretext? I don't think it does, Your Honor. I mean, the normal hiring procedures were . . . we can stipulate they weren't going to be followed because they told him, don't worry about it. Again, I realize there's other evidence in the record, but they call that a fact dispute, which means no summary judgment. So I'm trying to get to whether he was required to give more to refute their business reason for terminating him, to show pretext. Is the transcript enough, given that you can't say, well, he didn't follow the normal practices, he didn't apply to the portal? I mean, he says, you didn't even consider what I sent you, and I tried to identify all these things I was interested in, and you just did nothing, but you hired other people, or you didn't consider me, or something. I mean, again, the shifting story is evidence that refutes pretext also. I think that what we have here in the record is a lot of Mr. King just assuming that it must have had to do something with his disability, because there's no . . . other than perhaps arguably the two applications that Mr. Carl Young says, I submitted these and there were others better qualified. There's no evidence of any of the other applications that he applied specifically for. He didn't apply through the normal process. There's no setting aside those two. There's no other evidence of that, and I would say that with regard to pretext, that the neutral leave policy, though, the 180-day neutral leave policy, there's no evidence that that was ever applied differently to any other employees. There's no evidence that there was any discriminatory animus that had anything to do with whether he was selected for those positions or not. He didn't show that he was qualified for those positions, and that's where I believe the pretext argument fails. Do you agree, Ruth, that even one application would be enough? To show his prima facie case or to . . . That you could have a pretext on just one. You don't need 20 or two, do you? I don't think so. I think if there was evidence that there was some discriminatory animus there on even one, I think you're right, Your Honor. You don't need 50 or 20 or more than that. Thank you. Do you have anything further? I do not, Your Honor. Thank you. We have your argument. You saved time for rebuttal. Do you have anything? Thank you again, Your Honors, and may it please the Court. I want to address something about the waiver issue first because I think that this is essential to this Court's deliberations and consideration of this case. Usually when we talk about waiver, it's when somebody raises an issue for the first time in a reply brief that they never moved for in the first place, or alternatively, brings an argument to the Court of Appeals that they never addressed to the trial court. And the whole purpose behind it, of course, especially on the appellate level, is that the district court should have an opportunity to rule and we're not going to correct an error that it never had the opportunity to consider. Here, there can be no question that from the outset of this case, from the time that it filed its answer, DFW has been litigating the case and litigating the argument that it would be unduly burdensome for it to accommodate Mr. King's request. They said that in their answer. They said that in their response to plaintiff's motion for summary judgment, although they cited no evidence. And they've talked about it in their reply brief, excuse me, in their answering brief here on appeal. The idea that this is something that they just heard about that we're springing because all of our other arguments failed is simply not the case. There is, if the, excuse me Judge, you look like you're going to ask a question. Well, it just seems like that the fact that he'd been doing the job for six years, allegedly, would be the best evidence that he can be accommodated and do the job and that that would have been the lead thing. And that's not the lead thing in your brief. And so, since it's your rebuttal, but I just, it seems like why wasn't that the big lead emphasized point if you thought you had a slam dunk on the fact that the court didn't really analyze this even though y'all raised it? Your Honor, if I remember correctly, and I don't have him in front of me, our opening issue said that he was discriminated against when he was not, accommodations weren't made for his existing job. Their opening argument in their answering brief was you waived that argument and our response and our reply was no, we didn't. And because I think that that's the easiest way for this court to reverse and remand, that's why I've devoted my . . . Do you have anything from their answer or from something you want to refer us to? Yes. Or do you just want to go and look at this? Absolutely. A page, the record is page 12 and 13. That's, excuse me, page 30 of the record is DFW's answer in which they claim that in paragraph 46, accommodating this would impose an undue hardship. And then when DFW moved for summary judgment, sorry, when King moved for summary judgment, DFW responded on page 1147, claiming that all these cases would say this is an undue hardship and they set the standard for it or they articulated the standard for undue hardship, but they never pointed to any evidence in the record. And later in their own response, they say there's a fact issue with respect to undue hardship. So because we're there, all of this discussion about whether there was or was not pretext or the role of the 180 days, that goes out the window. He's made a claim that this . . . I was not accommodated for the job that I was currently doing and they didn't . . . That shifts the burden to them to come forth with evidence of undue hardship. If they don't do that, their case is over or at least their summary judgment motion fails. Or alternatively, plain of summary judgment motion, knocking out that affirmative defense should have been granted, then this case moves forward on that basis. And because the retaliation arguments are exactly the same as . . . basically the discussion from both the trial court and from the parties on the retaliation claim are exactly the same, it should remand on that issue as well. The only argument that they have is there was an administratively neutral reason for terminating him and that is he ran out of short-term leave. And the final point that I'd like to address, is that there's a lot of pointing the finger at Matrix both in argument today and in the briefs and even in the district court's opinion. There is no dispute that of the four people at the meeting on August 25th, three of them were DFW senior management, one of them was Matrix. Matrix was not added as a third-party defendant in this suit for negligently providing them with guidance on whether or not Mr. King was hireable or when his leave expired. The idea that we're just going to say that Matrix is somehow not our agent but yet all of its decisions and calculations govern, that argument's not in the record but it's also fairly hard to believe. At the end of the day, if they don't come forth with evidence that Mr. King's requested accommodation was an undue burden, they're not entitled to summary judgment. And to answer your final question, Judge Elrod, can this court simply remand for it to be considered in the first instance? Yes, it could. We respectfully request this court address the merits and acknowledge that this claim should have proceeded so that the trial can proceed with all due haste. Thank you. We have your argument. We appreciate the arguments in this case. Thank you, Your Honors.